## No. 12,666.

### State Board of Dental Examiners et al. *v.* Savelle.

(8 P. [2d] 693)

Decided January 18, 1932. Rehearing denied February 23, 1932.

178

Mr. John L. Underwood, Attorney General, Mr. Clarence L. Ireland, Attorney General, Mr. Arthur L. Olson, Assistant, Mr. Charles H. Haines, Special Assistant, for plaintiffs in error.

Mr. Horace N. Hawkins, Mr. Edward L. Wood, Mr. J. C. Stevenson, for defendant in error.

*En Banc.*

Mr. Chief Justice Adams delivered the opinion of the court.

The Denver district court, on certiorari to the state board of dental examiners and its members, restored the licenses of Dr. Savelle and other dentists to practice their profession in this state, theretofore revoked by the board. The board and its members bring error to review the judgment of the district court.

Several dentists are involved. The members of the board, as well as the five other men hereinafter named, are all licensed dentists in Colorado, but for brevity we shall designate the board and its members (plaintiffs in error) in their official capacity as the board or dental board, and the other five (defendants in error) as the dentists.

More fully stated, the facts are as follows: In a statutory proceeding before the board, it revoked the licenses of Drs. B. G. Savelle and A. W. Heitler to practice dentistry in this state, for alleged violation of professional

duties on a specific charge. Thereafter another similar proceeding was instituted before the board against Drs. John H. Miller, Charles W. Patch and Joseph R. Walsh. The ground of the complaint against the last three named dentists is the same as that against the first two, i. e., alleged "gross violation of professional duties" (the wording of the statute). However, there is this difference: the complaint against the last three, under the same heading of alleged professional misconduct, charges them with not only the commission of the particular act for which Savelle and Heitler were required to answer, but also with several other acts of a similar nature. We shall state them in detail later. The board, acting under the second proceeding, revoked the licenses of Miller, Patch and Walsh.

The five dentists sued out writs of certiorari from the district court, directed to the board and its members. That court tried the suits together, found the issues for the dentist in each case and cancelled the order of the board revoking his license. Five writs of error ensued; we consolidated them for hearing in this court; they were submitted on briefs and oral argument, but we now find it convenient to preserve the order followed before the board, and shall divide our examination into two opinions to simplify the issues. The complaint against Savelle and Heitler will be discussed in this opinion, but the charges against Miller, Patch and Walsh are further considered in *State Board of Dental Examiners v. Miller, infra*. We omit unnecessary reference to other dentists brought before the board under the same process, but whose cases did not reach this court.

Leaving out formal parts, the complaint and information filed with the board against Savelle and Heitler alleges that they are licensed dentists in this state and that they "have been guilty of unprofessional and dishonorable conduct and gross violation of professional duties in the practice of their profession as dentists under said licenses in that they have within and during one year

last past, in the City and County of Denver, State of Colorado, accepted employment by Painless Parker Dentist, a corporation of the State of California, to practice dentistry upon patients with whom said corporation entered into a contract to furnish dental services of licensed dentists and each and all of the above named persons have practiced dentistry by performing dental surgical operations upon such patients who paid the compensation for such services to said corporation and said corporation paid the dentists who so performed said dental surgical operations a salary or commission or compensation in some other form for working for said corporation.''

Savelle and Heitler appeared before the board in obedience to summons and interposed various objections, but they were overruled; hearing was held, testimony taken and these dentists found guilty, with the result as stated. The evidence was preserved; it was submitted to the district court and is now before us. The district court held, inter alia, that the charges were insufficient, and that in acting on the complaint the board was without jurisdiction and abused its discretion. These propositions will be now considered.

1. "Painless Parker Dentist," the California corporation mentioned in the above complaint, suffered a judgment of ouster, forbidding it to practice dentistry in Colorado. *People v. Painless Parker Dentist*, 85 Colo. 304, 275 Pac. 928. In a case decided by us at the same term, prohibition was sought in the district court to restrain the board from continuing to hear, pass upon or take further action in the proceedings then pending to revoke the licenses of Savelle, Heitler and other dentists. *People v. State Board of Dental Examiners*, 85 Colo. 321, 275 Pac. 933. The district court refused the writ of prohibition and we affirmed the judgment. We understand counsel for the board to construe our opinion there as concluding the rights of the dentists, but they have misconceived the purport of that opinion. It referred to procedural questions and the merits of the charges were

not prejudged nor determined. The present causes are before us on their merits. The evidence now before us is sufficient to sustain the charge that Savelle and Heitler were employed by Painless Parker Dentist. It is not seriously denied, if at all, and the question is simplified. It is reduced to this: Does such employment, under the circumstances of this case, as a matter of law, warrant the revocation of the dentists' licenses? In general, it involves the jurisdiction of the board and whether it abused its discretion.

2. The complaint against the dentists was made under the provisions of section 4575, C. L. 1921. This section provides, inter alia, for examinations and the granting of dental licenses by the board of examiners. It permits the board to revoke licenses on charges in writing, after due notice and hearing. The statute declares: "* * * the board * * * shall have the power upon a hearing * * * to revoke and annul any license of any dentist or dental surgeon or dental-hygienist, procured through fraud, deceit or misrepresentation, or for gross violation of professional duties, or for incompetency, immorality or being under the influence of liquor, in or about professional duties, or for the habitual use of drugs, or for the conviction of a felony, or for permitting anyone unless duly licensed to practice dentistry or dental-hygiene under him or with him or in his employment. No person whose license has been revoked, or annulled, shall be relicensed within one year thereafter and then only upon sufficient assurance to said board of correct practice in the future, and a second revocation or annulment of any license shall be perpetual. * * * The action upon such hearings by the state board of dental examiners may be reviewed by the district court of the state of Colorado, in the proper district, by writ of certiorari under the code of civil procedure."

3. Section 332 of the 1921 code reads: "The writ may be granted on application by any court of record, or upon the order of any judge thereof. The writ

shall be granted in all cases where an inferior tribunal, board or officer exercising judicial functions, has exceeded the jurisdiction or greatly abused the discretion of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy.''

Section 338 of the code provides: ''The review upon the writ shall not be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer.''

The following are some of the many cases dealing generally with the scope of review by certiorari, limiting it to the inquiry as to whether jurisdiction has been exceeded, discretion abused or authority regularly pursued: *Public Utilities Com. v. City of Loveland,* 87 Colo. 556, 289 Pac. 1090; *Board of Commissioners v. Dunlap,* 83 Colo. 360, 364, 265 Pac. 94; *State Board of Medical Examiners v. Spears,* 79 Colo. 588, 247 Pac. 563; *Doran v. State Board of Medical Examiners,* 78 Colo. 153, 157, 240 Pac. 335; *State Board of Medical Examiners v. Brown,* 70 Colo. 116, 198 Pac. 274; *White v. Andrew,* 70 Colo. 50, 197 Pac. 564; *Dillard v. State Board of Medical Examiners,* 69 Colo. 575, 196 Pac. 866; *State Board of Medical Examiners v. Boulls,* 69 Colo. 361, 195 Pac. 325; *State Board of Medical Examiners v. Noble,* 65 Colo. 410, 177 Pac. 141; *Thompson v. State Board of Medical Examiners,* 59 Colo. 549, 151 Pac. 436; *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 Pac. 132, 51 L. R. A. (N. S.) 958; *Graeb v. State Board of Medical Examiners,* 55 Colo. 523, 139 Pac. 1099, 47 L. R. A. (N. S.) 1063.

4. As to the dentists' contention, sustained by the district court, that the dental board was without jurisdiction: The term includes jurisdiction over the subject-matter as well as over the person. *Pomeranz v. Class,* 82 Colo. 173, 181, 257 Pac. 1086. It ''includes not only the power to hear and determine a cause, but to enter and

184

enforce a judgment." *Williams v. Hankins*, 75 Colo. 136, 141, 225 Pac. 243. Counsel for the dentists do not contend that there was any lack of jurisdiction over their persons, by reason of insufficient notice or otherwise. This reduces the question to that of the subject-matter which engaged the attention of the board, namely, the alleged gross violation of professional duty on the part of the accused dentists.

█ █ 5. Infallibility of judgment is not the test of jurisdiction. "* * * jurisdiction of the subject-matter is the power lawfully conferred to deal with the general subject involved in the action." *Hunt v. Hunt*, 72 N. Y. 217, 228-230, 28 Am. Rep. 129 (quoted in an extended footnote to page 154, section 129, Pomeroy's Equity Jurisprudence [4th Ed.]). The statute is the sole source of the authority of the dental board and it cannot transcend it (*Graeb v. Medical Examiners, supra*), but in dealing with a case such as alleged in the complaint, the matter was germane to section 4575, C. L. 1921, and it was within the power of the board to act. Our conclusion is, that whether its judgment was right or wrong, its jurisdiction was complete over the persons of the accused, as well as the subject-matter.

█ 6. We believe that the learned district court does not differ with us materially as to the factors of jurisdiction, but in their application. It is conceivable that a complaint alleging gross violation of professional duties in general terms, might destroy itself by specifying a particular act in support of the charge, but which in truth showed on its face was an innocent act. In such case the general allegation might yield to the specific, and the complaint be demurrable on jurisdictional grounds. Such no doubt was the theory of the trial court. We say this because of its apparent conviction that the dentists' rendition of professional services to the public under the pseudonym of the outlawed Painless Parker Dentist was not unlawful. We are unable to agree with the trial court in this respect.

■ 7. Special counsel for the board argues that the action of the board should be conclusive upon the courts for the reason that a lawyer's training does not qualify a judge to understand the subjects of standards of conduct of dentists; that this is peculiarly within the knowledge of the board, comprised of dentists. The district court very naturally and properly rejected this far-fetched reasoning, and proceeded in the discharge of its duties. From the standpoint of statutory construction alone, if this penal statute is too difficult and technical for any but the minds of the honorable dental examiners to comprehend, it is too abstruse to be a valid public act, too remote to apprise the dentists of their legal duties, and too mysterious for the courts to attempt to enforce. The statute to be valid must be clear enough so that it is understood, or is capable of being understood, by those who are affected by it. We hold that the act fulfills these conditions; if it did not, the dental board would be out of court on its own statement. Courts welcome the advice of experts in countless fields of human endeavor, but when doctors disagree, who but judges shall decide between them?

■ Furthermore, this is not strictly a case for the construction of dental ethics. The law does not punish one for the mere violation of ethics as such, any more than it would expatriate a citizen for breaking the rules of a lodge, church or club. It is only when the infraction attains the proportions of a breach of legal duty that the law is offended. When it reaches that stage, as here alleged, the abstract question of ethics is merged into a question of law.

■ Constitutional courts are not subservient to statutory boards of administration. It is no answer to say that the board would not act injudiciously. The answer is that such board or department is not vested with arbitrary powers. 48 C. J., page 1097, §64; *Douglas v. Noble,* 261 U. S. 165, 43 Sup. Ct. 303. We do not hold that the board has acted arbitrarily, but that it is for-

bidden to do so, which would not be the case if the argument of its special attorney were tenable.

8. Since section 4575 of the dental act is clearly and unequivocally expressed, it disposes of the dentists' constitutional objections, as supposedly violating the "due process of law" clause. We have held reasonable regulations of the practice of dentistry to be proper in the exercise of the police power of the state for the promotion of the general welfare. *Gothard v. People,* 32 Colo. 11, 74 Pac. 890. Similar restrictions concerning physicians and surgeons violate no constitutional right. *State of Missouri ex rel. Hurwitz v. North,* 271 U. S. 40, 48 Sup. Ct. 384; 48 C. J., page 1068, §12 B; *Chenoweth v. State Board of Medical Examiners, supra; Smith v. People,* 51 Colo. 270, 117 Pac. 612, 36 L. R. A. (N. S.) 158, and other cases above cited. Upon principle, the regulations of the dental profession are not generally dissimilar in effect to those imposed upon the practice of medicine. See *Douglas v. Noble, supra.*

9. As to the meaning of the words, "gross violation of professional duty," a definition of the word "gross" contained in Webster's New International Dictionary is as follows: "9. Out of all measure; beyond allowance; not to be excused; flagrant, shameful; as, a *gross* dereliction of duty; a *gross* injustice; *gross* carelessness." The term "gross violation of professional duty" is construed in a case not cited in the briefs, *State v. Purl,* 228 Mo. 1, 128 S. W. 196. That opinion goes to show that the Missouri dental act authorized the dental board to revoke an original license "for fraud, deceit or misrepresentation in the practice of dentistry, or for gross violations of professional duties." The court sustained the revocation of the licentiate's right to practice on account of misleading advertising. Under a rule of statutory construction, it was held that the latter clause was controlled by the preceding words, "fraud," "deceit," and "misrepresentation." The three words last quoted are contained in the Colorado statute, section 4575,

C. L., but with reference to the procurement of a license. Nevertheless they may be well noticed in connection with the words that follow, pertaining to revocation, for assistance in determining the legislative intent. The term "unprofessional" is convertible with "dishonorable." *Chenoweth v. State Board of Medical Examiners, supra,* at page 81 of the opinion. "Unprofessional conduct" means that which is by general opinion considered to be grossly unprofessional because immoral or dishonorable, as distinguished from a mere violation of a code of professional ethics, prescribed by a board of health. *Aiton v. Board of Medical Examiners,* 13 Ariz. 354, 114 Pac. 962. This thought is uppermost in *Doran v. State Board of Medical Examiners, supra,* decided by this court. Mr. Justice Campbell there directed attention to the fact that a certain advertisement, caused to be published in a newspaper by a physician, constituted an offense so opprobrious that not only the medical board, but the average layman as well as the courts would conclude that the act was reprehensible. Keeping in mind that the two dentists now before us are charged with practicing their profession under the employment and direction of an unlicensed corporation, we have given them the benefit of the above definitions and distinctions, but it does not exonerate them from the charge of gross professional misconduct; it only emphasizes it.

10. The practice of dentistry under the name of a corporation not licensed and not entitled to a license for such purpose is unlawful. "Dentistry is a profession having to do with public health, and so is subject to regulation by the state. The purpose of regulation is to protect the public from ignorance, unskillfulness, unscrupulousness, deception and fraud. To that end the state requires that the relation of the dental practitioner to his patients and patrons must be personal." *Winslow v. Board of Dental Examiners,* 115 Kans. 450, 223 Pac. 308.

We have not overlooked the fact that the Kansas stat-

ute under which the above case was brought expressly forbids the practice of dentistry other than in one's own name. While our statute is otherwise worded, its intendment is the same, and the Winslow case, supra, involved still other sections of the Kansas law similar to our own. That court severely condemned the cloaking of a dentist's professional identity under the name of an unlicensed corporation as "pretensions, and impostures of charlatanry." Such evasion is contrary to public policy and we adopt the reasoning of the Kansas case. The necessity of prescribing regulations for the practice of dentistry is stressed in *Gothard v. People,* 32 Colo. 11, 74 Pac. 890. An honorable professional man's good name is his most valuable asset, not to be bartered away. As we said in *People v. Painless Parker Dentist, supra,* dentistry is one of the learned professions. It involves personal skill, presupposes a period of novitiate, intensive preparation, due examination and admission, and that the licentiate's sheepskin is solely his own. The public has a right to believe that these things are true, and that the dentists' talents require no subterfuge in names or otherwise. To permit it would be to allow a species of misrepresentation and fraud upon the public.

11. In addition to the express statutory restraint against gross professional misconduct, the following concomitant provision in the same section (4575) for the violation of which a license to practice dentistry may be revoked, is pertinent: "* * * or for permitting anyone unless duly licensed to practice dentistry or dental-hygiene under him or *with him* or in his employment." While this particular offense was not alleged in the exact words of the statute, it is essentially included in the offense as charged, and sustained by the proof of Savelle's and Heitler's association with and assistance given Painless Parker Dentist in the practice of their profession. The statute contains a double prohibition in this regard; it was not a separate offense, and the information apprised the dentists of the only charge that they were

called upon to meet, but which act they admitted. "Such a hearing is not to be construed with technical strictness." *Davis v. Board of Registration in Medicine*, 251 Mass. 283, 146 N. E. 708.

12. After this cause was argued, the District Court of Appeals, California, decided the case of *Parker v. Board of Dental Examiners*, 1 P. (2d) 501. Counsel for the dentists rely upon it. Painless Parker Dentist, the California corporation against which we directed a judgment of ouster from this state, is discussed in that opinion. Statutes of that state, unlike ours, are there construed under different facts. It appears that such decision may be only tentative, as a hearing was later granted by the Supreme Court of that state, and we are not informed that the cause has been finally determined. For these reasons we feel that it would not be profitable for us to discuss that opinion at this time.

 It would be folly to oust Painless Parker Dentist, a corporation, from the practice in this state and at the same time let it attempt to continue such practice of dentistry through its servants. Its supposed virtues and vices have been fully argued in the briefs, but its permanent status as an outlaw corporation in Colorado is definitely determined in the Parker case in the 85th Colorado reports.

We are forced to the conclusion that Savelle and Heitler were guilty of gross violation of their professional duties, but we have examined the evidence to see whether the board exceeded its jurisdiction or abused its discretion. This is in accordance with our practice. *Dillard v. State Board of Medical Examiners, supra.* A similar procedure is followed in other states. 48 C. J., page 1105, §80 bbb; 5 R. C. L., pages 261, 262, §12.

In considering the surrounding circumstances, we note that *People v. Painless Parker Dentist, supra,* was a test case and was decided by this court in March, 1929. Theretofore, the objectionable practice of dentistry in this state by the Parker company had been carried on for

many years. It was tolerated, or at least no decisive steps were taken to suppress it prior to the commencement of that action, as far as our records show. The question had never been decided before by this court; it is claimed that such practice was sanctioned in other states, and it is certain from the Parker decision that up to that time the district court of the city and county of Denver held views contrary to ours. It appears from the record that these dentists were influenced by such considerations and that Savelle and Heitler were neither charged with nor found guilty of any violation of the dental act after the announcement of the above decision. It may be well said that these matters do not absolve the dentists from the consequences of their previous breach of law, and nothing here said is intended to approve of such acts, or to sanction the practice of dentistry under the Painless Parker name, or with or under any allied or similar organization. We mention it only in connection with the penalty inflicted.

We believe that the dental board labored under the mistaken assumption that it had no alternative under the statute except to either acquit the dentists, or to annul their licenses. We do not so construe section 4575, C. L. Since the greater includes the less, the power to revoke permanently includes the power to revoke temporarily, i. e., to suspend. It is to be observed, however, that no suspension can be for more than one year. We think that the dentists were deprived of the benefit of a consideration of the above reasonable construction of the act as to suspensions when the extreme penalty was inflicted, and that the dental board thereby unintentionally abused its discretion in the premises, to the prejudice of the accused.

For the above reasons, the judgment of the district court is accordingly modified, to allow the dental board to revise its judgment. The cause is therefore remanded to the district court with instructions to recommit the same to the state board of dental examiners for further

proceedings not inconsistent with this opinion. All costs shall be taxed to Savelle, the defendant in error.

Mr. Justice Hilliard, before his election to this court, was one of counsel who appeared before the dental examiners, as well as in the district court, in the present five dental cases this day decided. For this reason he has not participated in any of our decisions pertaining to them.

Judgment modified and cause remanded with instructions.

Mr. Justice Hilliard not participating.